**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KIRK CAHILL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIPO-FLAVONOID LLC and BRIDGES CONSUMER HEALTHCARE, LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff, Kirk Cahill (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by his attorneys, alleges the following upon information and belief, except for those allegations pertaining to Plaintiff, which are based on personal knowledge:

## NATURE OF THE ACTION

1. This is a consumer class action concerning the deceptive marketing of Lipo-Flavonoid by Defendants Lipo-Flavonoid, LLC and Bridges Consumer Healthcare, LLC ("Defendants").

2. Lipo-Flavonoid (sometimes referred to herein as the "Product") is a dietary supplement falsely touted as an effective remedy for tinnitus, or "ringing in the ears." Despite its widespread marketing, there is no competent scientific evidence that Lipo-Flavonoid or its ingredients provide any measurable benefit in treating or relieving tinnitus symptoms.

3. Defendants have long known this. In 2015, Clarion Brands, the former marketer of Lipo-Flavonoid, was investigated and found to have violated advertising norms by the National

Advertising Division (NAD) and the National Advertising Review Board (NARB) of the Better Business Bureau. Clarion agreed to cease several of its most aggressive claims about the product.

4. Yet, in 2021, after Clarion was acquired by Bridges Consumer Healthcare, LLC, the newly formed entity Lipo-Flavonoid LLC resumed substantially similar marketing under new branding. The product formulation did not change, nor did the fundamental claims.

5. These deceptive representations include statements such as "#1 ENT Doctor Recommended," and "Clinically Shown to Help Manage Ear Ringing," which give consumers the false impression that the product is both medically endorsed and clinically validated.

6. In fact, the best available scientific evidence has consistently found that Lipo-Flavonoid is no more effective than placebo. Numerous peer-reviewed studies and systematic reviews have confirmed the absence of clinical benefit. Yet Defendants continue to mislead vulnerable consumers who are desperate for relief from a distressing condition.

7. Plaintiff Kirk Cahill, a resident of Queens, New York, purchased Lipo-Flavonoid at retail locations in Queens based on the product's advertised claims. He brings this action under New York General Business Law (GBL) sections 349 and 350 and for breach of express warranty, on behalf of a nationwide class and a New York subclass.

## **FACTUAL BACKGROUND**

8. Tinnitus is a condition which causes a person to "experience ringing or other noises in one or both . . . ears.[1]" "The noise you hear when you have tinnitus isn't caused by an external sound, and other people usually can't hear it. Tinnitus is a common problem. It affects about 15% to 20% of people, and is especially common in older adults.[2]"

---

[1] https://www.mayoclinic.org/diseases-conditions/tinnitus/symptoms-causes/syc-20350156
[2] *Id.*

9. Defendants portray the Product as a legitimate, tested and doctor recommended treatment for tinnitus.

10. A picture of the label for the Product appears below:




11. As shown above, Defendants claim that the Product "reduces ear ringing" and is "[c]onsidered by ENT's the #1 supplement to reduce tinnitus."

12. The packaging further refers to the Product as the "# 1 doctor recommended brand" and references its "clinically tested ingredients."

13. Unfortunately for Plaintiff and consumers at large, these express representations are false.

14. A 2016 randomized controlled trial published in the *Journal of the American Academy of Audiology* evaluated the effect of Lipo-Flavonoid combined with manganese in treating tinnitus. The study was: "not able to conclude that . . . Lipoflavonoid Plus is an effective treatment for tinnitus.[3]"

15. According to the clinical practice guidelines developed by the American Academy of Otolaryngology for the treatment of tinnitus, "[E]vidence for efficacy of [lipoflavonoids] does not exist.[4]"

16. The American Tinnitus Association, in reviewing several purported "cures" for tinnitus, including Lipo-Flavonoid concluded that: "The research is clear in showing that dietary supplements are ineffective for reducing the perception of tinnitus.[5]"

17. Healthline, a respected consumer medical information site reviewed by physicians, concluded: "The supplement Lipo-Flavonoid has been promoted to treat this health problem. Yet there is a lack of evidence showing that it helps.[6]"

18. Thus, the current body of scientific and medical literature reflects a broad consensus: Lipo-Flavonoid is ineffective for the treatment of tinnitus.

19. Indeed, Defendants are and have long been aware that the Product is not an effective treatment for tinnitus.

---

[3] Rojas-Roncancio E, Tyler R, Jun HJ, Wang TC, Ji H, Coelho C, Witt S, Hansen MR, Gantz BJ. Manganese and Lipoflavonoid Plus(®) to Treat Tinnitus: A Randomized Controlled Trial. *J Am Acad Audiol*. 2016 Sep;27(8):661-8.
[4] https://www.entnet.org/quality-practice/quality-products/clinical-practice-guidelines/tinnitus/
[5] https://ata.org/wp-content/uploads/2020/01/Summer-2018-18.pdf
[6] https://www.healthline.com/health/can-lipoflavonoid-stop-ringing-in-ears.

20. Previously, the Product was manufactured and sold by a company called Clarion Brands.

21. In 2015, the National Advertising Division (NAD)[7] of the Better Business Bureau opened a formal investigation into Clarion Brands' marketing of Lipo-Flavonoid.

22. The NAD found that Clarion had disseminated advertising implying that Lipo-Flavonoid could substantially reduce or eliminate tinnitus, including:

a. Use of customer testimonials claiming full or significant relief;

b. Language suggesting clinical validation for tinnitus treatment; and

c. Statements that the product was the "#1 ENT Doctor Recommended."

23. The NAD concluded that Clarion lacked competent and reliable scientific evidence to support such claims.

24. As a result, the NAD recommended that Clarion:

a. Discontinue or substantially modify its efficacy claims;

b. Refrain from using unqualified testimonials implying complete relief;

c. Substantiate or discontinue its "#1 doctor recommended" messaging.

25. Clarion then appealed this outcome to the National Advertising Review Board (NARB).

26. In 2016, NARB upheld NAD's findings in full and agreed that the advertising conveyed an unsupported impression of therapeutic efficacy.

---

[7] "The U.S. advertising industry founded the National Advertising Division (NAD) and the National Advertising Review Board in 1971 as a system of independent industry self-regulation to build consumer trust in advertising and support fair competition in the marketplace. NAD holds national advertising across all media types to high standards of truth and accuracy by reviewing truth-in-advertising challenges from businesses, trade associations, consumers, or on its own initiative." *See* https://bbbprograms.org/programs/advertising/nad

27. In response, Clarion publicly stated that it would comply with the NARB ruling.[8]

28. However, in 2021, Defendant Bridges Consumer Healthcare, LLC acquired Clarion and then created Defendant Lipo-Flavonoid LLC to continue marketing the same Product.

29. Despite the prior rulings of the NAD/NARB rulings, Defendants continue to:

a. Claim the Product is the #1 ENT Doctor Recommended supplement for ear ringing;

b. State the Product is clinically shown to help manage ear ringing;

c. Use medical-style imagery and testimonials implying tinnitus relief.

30. These representations are mirrored on the Lipo-Flavenoid website as shown below:




[8] *See* https://www.hunton.com/hunton-retail-law-resource/consumer-protection-in-retail-weekly-roundup-10 ("While disputing many of the NARB's findings, Clarion Brands has agreed to accept the decision and take the recommendations into account in future advertisements.").




31. These representations are substantially the same as those NAD and NARB required Clarion to stop using.

32. Thus, the corporate rebranding did not address the underlying deception—it merely changed the name on the label while reviving the same false narrative.

33. While Defendants' website contains a "white paper" purporting to substantiate Defendants' claims regarding the efficacy of the Product,[9] this "white paper" falls miles short of demonstrating that the Product is accurately marketed. The white paper does not point to a single randomized controlled trial or unbiased peer reviewed publication which recommends the use of the Product to treat tinnitus. The best Defendant can do is point to a completely unreliable and uncontrolled observational study, referred to as the "SILENT" trial. This study was conducted using vague criteria and a ludicrously small sample size where only 7% of the purported

[9] https://cdn.shopify.com/s/files/1/0667/5185/6697/files/lipo-flavonoid-whitepaper_295b78cd-753e-4d9c-8215-337519d3df8a.pdf?v=1741108650

participants even bothered to fill out surveys regarding their experience. Even under those incredibly biased conditions, Defendants were not able to demonstrate any clinically significant improvement in tinnitus symptoms through use of the Product.

34. Continuing their attempts to deceive the public into believing the Product works, in 2021 Defendants had the results of their SILENT trial published in the International Journal of Otolaryngology and Head & Neck Surgery.[10] Though not mentioned in the white paper, the 2021 publication of the SILENT trial reveals that it was funded by Defendants. Also not mentioned in the white paper, the study was conducted by marketing consultant Lori Lonczak whose company "specializes in healthcare professional marketing that drives incremental revenue for Over-The-Counter (OTC), Rx, Medical Device and Diagnostic brands.[11]"

35. Defendants will no doubt try to pretend that the SILENT trial, repackaged as the Lonczak study is a legitimate demonstration of the effectiveness of their Product. In reality it is little more than a marketing ploy.

36. Moreover, Defendants' "Money Back Guarantee" does not provide any relief to Plaintiff or most consumers. To be eligible for a refund, a consumer must use the Product for 60 days as directed and ask for a refund within 90 days of purchase.[12] Thus, there is only a 30 day window in which it is even theoretically possible for a consumer to obtain a refund. In addition, an image of a receipt is required for a refund. Defendants are surely aware that the vast majority of reasonable consumers do not maintain receipts for consumer products they purchased months ago. Thus, the "Money Back Guarantee" is designed to help as few people as possible.

---

[10] *See* Lonczak, L.E. (2021) Lipoflavonoid Benefits in Patients with Tinnitus. International Journal of Otolaryngology and Head & Neck Surgery, 10, 147-157.
[11] https://www.stratifymarketing.com/
[12] https://lipoflavonoid.com/pages/refund/

37. In sum, Defendants continue to profit from misleading claims, despite the clear weight of scientific evidence and prior regulatory action.

## JURISDICTION AND VENUE

38. This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section §1332(d) in that (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of New York and Defendants are citizens of Delaware and Tennessee; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

39. This Court has personal jurisdiction over Defendants because Defendants conduct and transacts business in the state of New York, contracts to supply goods within the state of New York, and supplies goods within the state of New York.

40. Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the state of New York. A substantial part of the events or omissions giving rise to the Classes' claims occurred in this district.

## PARTIES

### Plaintiff

41. **Plaintiff Kirk Cahill** is a citizen of the State of New York and resides in Queens County. Plaintiff purchased Lipo-Flavonoid in person in Queens, New York in 2025 relying on the product packaging which claimed that the Product was effective and recommended by ENT doctors. Had Plaintiff known these claims were false or misleading, he would not have purchased the Product.

42. **Defendant Lipo-Flavonoid LLC** is a Delaware limited liability company with its principal place of business in Chattanooga, Tennessee. Lipo-Flavonoid LLC was created by

Bridges Consumer Healthcare following its 2021 acquisition of Clarion Brands. It currently owns and markets the Lipo-Flavonoid product.

43. **Defendant Bridges Consumer Healthcare, LLC** is a Tennessee limited liability company with its principal place of business in Chattanooga, Tennessee. Bridges is the sole member and parent of Lipo-Flavonoid LLC and controls its marketing, branding, and distribution.

## CLASS ALLEGATIONS

44. Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution.

45. The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

46. Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the state of New York at any time during the Class Period (the "New York Subclass").

47. The Class and New York Subclass are referred to collectively throughout the Complaint as the Class.

48. The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

49. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class and the New

York Class who are Class Members as described above who have been damaged by Defendants' deceptive and misleading practices.

50. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a. Whether Defendants were responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c. Whether Defendants made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

d. Whether Defendants' false and misleading statements and omissions concerning its Products were likely to deceive the public; and

e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

51. Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

52. Adequacy: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent, his consumer fraud claims

are common to all members of the Class, he has a strong interest in vindicating his rights, he has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

53. Predominance: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

54. Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendants' uniform false advertising to purchase its Products.

55. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CLAIMS

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

56. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

57. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

58. The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages against Defendant.

59. There is no adequate remedy at law.

60. Defendants misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

61. Defendants' improper consumer-oriented conduct— in advertising its Product as a clinically effective, doctor-recommended treatment for tinnitus, despite a lack of scientific substantiation and contrary to the recommendations of leading medical authorities —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase Defendants' Products and to use the Products when they otherwise would not have. Defendants made the untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

62. Plaintiff and the New York Subclass Members have been injured inasmuch as they purchased Products that were mislabeled. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

63. Defendants' advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

64. Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

65. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
## (On Behalf of Plaintiff and the New York Subclass Members)

66. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

67. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

68. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

69. Defendants' labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Products inasmuch as it misrepresents that the Products

are a clinically effective, doctor-recommended treatment for tinnitus, despite a lack of scientific substantiation and contrary to the recommendations of leading medical authorities

70. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging, and advertising and purchased Products that were mislabeled, unhealthy, and entirely worthless. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and paid for.

71. Defendants' advertising, packaging, and Products' labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

72. Defendants made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

73. Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

74. Defendants made the material misrepresentations described in this Complaint in its advertising and on the Products' packaging and labeling.

75. Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

76. As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, statutory, and compensatory damages, restitution, and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiffs and the Nationwide Class)**

77. Plaintiff repeats and re-allege the allegations above as if set forth herein.

78. Defendants, through their marketing and labeling, expressly warranted that Lipo-Flavonoid "reduces ear ringing" and was considered by ENTs to be the "#1 supplement to reduce tinnitus".

79. These affirmations of fact were part of the basis of the bargain between Plaintiff and members of the Nationwide Class and Defendants.

80. Lipo-Flavonoid did not conform to these express warranties because it is not clinically effective for treating tinnitus and is not supported by reliable medical consensus or endorsement.

81. Plaintiff learned that Defendants Product fails to adhere to the affirmations stated on the Product marketing in or around July 2025. Plaintiff provided Defendants with timely notice of this breach of warranty by letter dated July 31, 2025. Defendants have not remedied this breach of warranty.

82. Plaintiff and the Nationwide Class were injured as a direct and proximate result of Defendants' breach of warranty by overpaying for an ineffective product and now seek all remedies available to them under the law.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative

of the Class under Rule 23 of the FRCP;

(b) Awarding monetary damages, restitution damages, punitive damages and treble damages;

(c) Awarding statutory damages of $50 per transaction, and treble damages for knowing and willful violations, pursuant to N.Y. GBL § 349;

(d) Awarding statutory damages of $500 per transaction pursuant to N.Y. GBL § 350;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys, experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: October 22, 2025

**FURIA LAW, LLC**

By: Philip Furia

Philip J. Furia
880 Third Avenue, Fifth Floor
New York, New York 10022
Tel : 646-830-1915
furiap@furiafirm.com

*Counsel for Plaintiff and the Class*